JUDGE HELLERSTEIN

# 14 CV 8402

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

MICHAEL PRESTON,                                      :

                                                      :      Case No.:

                    Plaintiff,            :

                                                      :

        v.                                   :

                                                      :

HSBC SECURITIES (USA) INC.,                           :

                                                      :

                  Defendant.           :

------------------------------------------------------------ X

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Michael Preston ("Plaintiff" or "Mr. Preston"), by and through his undersigned

counsel, as and for his Complaint in this action against Defendant HSBC Securities (USA) Inc.

("Defendant or "HSBC"), hereby alleges as follows:

### NATURE OF THE CLAIMS

1.      This is an action for declaratory, injunctive and equitable relief, as well as

monetary damages, to redress Defendant's unlawful employment practices, including their

unlawful discrimination, sexual harassment and retaliation against Plaintiff, in violation of the

New York State Human Rights Law, N.Y. Executive Law §§ 290, *et seq.* (New York State

Human Rights Law), and the New York City Human Rights Law, New York Administrative

Code §§ 8-101 *et seq.* ("New York City Human Rights Law").

2.      Defendant's conduct is also in violation of Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). For these violations, Mr. Preston

will file a charge of discrimination with the Equal Employment Opportunity Commission

("EEOC") and will file an Amended Complaint following receipt of a Notice of Right to Sue.

3.      Defendant's conduct was knowing, malicious, willful and wanton and/or showed

a reckless disregard for Plaintiff, which has caused and continues to cause Plaintiff to suffer

1

substantial economic and non-economic damages, permanent harm to his professional and personal reputation, and severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

4.      This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332, as there is diversity of citizenship between Plaintiff, a resident of the State of New Jersey, and Defendant, a foreign corporation with a principal place of business in New York, New York, and this action involves a matter in controversy that exceeds the sum of $75,000, exclusive of interest and costs.

5.      The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant is a Delaware corporation with a principal place business in the State of New York and is subject to personal jurisdiction in this district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

7.      Plaintiff Michael Preston, a former employee of HSBC, currently resides in Ocean County in the State of New Jersey. At all relevant times, he met the definition of an "employee" under all applicable statutes.

8.      Upon information and belief, Defendant HSBC Securities (USA) Inc. is a foreign business corporation organized and doing business under the laws of the State of Delaware with a principal place of business located at 452 Fifth Avenue, New York, NY 10018. At all times relevant herein, HSBC was and is an "employer" under all applicable statutes.

2

## PROCEDURAL REQUIREMENTS

9.      Prior to the commencement of this action, a copy of this Complaint was served on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of § 8-502 of the New York City Administrative Code.

10.     Plaintiff intends to file a charge of discrimination with the EEOC, and will file an Amended Complaint to include claims under Title VII following receipt of a Notice of Right to Sue.

11.     Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

### Mr. Preston's Employment with Defendant

12.     Mr. Preston commenced his employment with HSBC as a temporary employee in its Global Banking Due Diligence Department (the "Department") in or around September 2013.

13.     Mr. Preston quickly established himself as a hardworking, conscientious and devoted employee. Indeed, Mr. Preston's supervisors and coworkers expressly acknowledged Mr. Preston's contributions to the Department.

14.     In or around January 2014, as a result of his exemplary record of employment as a temporary employee, Mr. Preston was extended an offer of permanent employment as Global Banking Due Diligence Analyst at HSBC.

15.     After commencing his new permanent role, Mr. Preston was regularly called upon by his managers to supervise and train less experienced analysts in the Department, and his work—specifically his efficiency in completing projects—was used as an benchmark of desired standards within the Department on several occasions.

3

16.     Encouraged by the positive feedback he was receiving from his team on a daily

basis, Mr. Preston continued to actively develop and fine-tune his skills, with the aim of being

promoted to a supervisory position.

17.     In or around early-April 2014, Ms. Susan Lewis ("Ms. Lewis") joined HSBC as a

Team Lead in Mr. Preston's department.  Consistent with his experience in the preceding three

months of his permanent employment at HSBC, Mr. Preston received regular praise from Ms.

Lewis, and assisted her with both training and supervising other members of the Department, and

in ensuring goals and targets across the Department were met and exceeded.

### Sexual Harassment and Retaliation

18.     In or around early-May 2014, in an effort to integrate more experienced

employees with those who needed additional supervision, Ms. Lewis readjusted the seating

arrangements and desk assignments in the Department.

19.     As a result of this rearrangement, Mr. Preston's desk was relocated to a close-by

cluster, where he was now seated next to Mr. Christopher France ("Mr. France"), a fellow Global

Due Diligence Analyst.

20.     Over the course of their prior seven months of working together at HSBC, Mr.

Preston was aware, through many explicit remarks made by Mr. France as to his sexual

conquests, that Mr. France was a gay male.

21.     Further, prior to being seated next to Mr. France, Mr. Preston had had several

encounters with Mr. France wherein he had made it explicitly clear that he found Mr. Preston

sexually desirable, and that he wished to pursue a sexual relationship with Mr. Preston.

22.     Despite this prior behavior from Mr. France, Mr. Preston accepted his seat

relocation without resistance, with the hope that he would be able to continue to provide the

4

highest level of support to the Department free from unwanted sexual advances, and continue to work toward a Team Lead position within the Department.

23.     However, it soon became clear to Mr. Preston that this relocation marked the beginning of a campaign of severe and pervasive verbal and physical sexual harassment from Mr. France.

24.     On a daily basis, Mr. France would comment on Mr. Preston's appearance and physique, and would make explicit remarks concerning how looking at Mr. Preston made him aroused.

25.     On May 23, 2014, Mr. France asked Mr. Preston to accompany him to the gym, so that they could engage in sexual activities together in the locker room.  Mr. Preston declined this invitation, and asked Mr. France to "back off."

26.     Later that day, Mr. France followed Mr. Preston into the men's bathroom, where he proceeded to peer into Mr. Preston's stall, and asked him "how's that penis," and whether it "would be put to good use this weekend."

27.     Upon immediately leaving the restroom, Mr. Preston encountered Mr. Arthur Rudnicki ("Mr. Rudnicki") another Global Due Diligence Analyst in Mr. Preston's Department, and a known personal friend of Mr. France.

28.     Horrified, Mr. Preston explained to Mr. Rudnicki the exchange between he and Mr. France in the bathroom, but was told by Mr. Rudnicki that if he should "give him what he wants one day, he will be happy and leave you alone."

29.     As a result of this, Mr. Preston approached his supervisor, Ms. Lewis, to explain the history of the unwanted flirting from Mr. France, and how this had escalated into more

serious suggestions and requests for sex since he had been reseated next to Mr. France earlier that month.

30.     Ms. Lewis advised Mr. Preston to keep her abreast of the situation, but noted that Mr. France was just a "fun" and "jokey" guy, who likely meant no harm.

31.     Over the course of June and July 2014, Mr. France continued to sexually harass Mr. Preston, both by way of making explicit requests for sexual favors, as well as by physically touching and fondling Mr. Preston in a sexual manner on the arms, legs, buttocks and neck.

32.     On one occasion in mid-June, Mr. France approached Mr. Preston and asked him to "suck [Mr. France's] dick," among many other explicit sexual remarks.

33.     Mr. France would also tell Mr. Preston about his sexual escapades with men, and boast about his desire and self-perceived ability to convince Mr. Preston, a heterosexual male, to have sex with him.

34.     Mr. Preston again approached Ms. Lewis in late-June, to provide more specific examples of the unlawful and harassing conduct to which he had been subjected by Mr. France many times per day for the preceding few months, and requested his seat be moved so that he was no longer seated physically next to Mr. France on a daily basis, in the hope that this would at least stop the physical groping of his thighs and other parts of his body that would occur while Mr. Preston was seated directly beside Mr. France.

35.     Ms. Lewis agreed to "look into it," but again pointed out that she assumed that Mr. France and Mr. Preston were "friendly," and so, quite shockingly, did not understand Mr. Preston's protests against the unwanted touching and sexually harassing comments.

36.     Unsatisfied with Ms. Lewis' response, and feeling increasingly more trapped and emotionally distressed by the unwanted sexual advances, Mr. Preston approached Mr. Nicholas

6

Scado Levino in early July, to raise the possibility of moving to another department. Mr. Scado Levino promised to discuss the matter with Ms. Lewis.

37.     On or around July 11, 2014, Mr. Preston had his mid-year review, in which he was given perfect feedback, and scores that "exceeded expectations" across the board.

38.     Mr. Preston used his perfect performance review as the basis to request a transfer into the GBM Onboarding Team during a discussion with Mr. Jason Mitnick, a Manager in that department.

39.     During this discussion, Mr. Preston also detailed his complaints against Mr. France, and expressed concern that his current Departmental Manager, Ms. Lewis, had failed to take any action to remedy the situation. He explained that he felt he could no longer work alongside Mr. France, who clearly had an intense sexual fixation on Mr. Preston, and who expressed this many times a day both verbally and by way of unlawful touching of a sexual nature. Mr. Preston also noted that Mr. France's actions appeared to be supported by Mr. Rudnicki, who often witnessed these instances, and merely encouraged Mr. Preston to engage in sexual contact with Mr. France. Mr. Mitnick agreed to take the request to his manager, Ms. Janet Mennona, upon her return to the office.

40.     On or around July 14, 2014, Mr. Preston took vacation from HSBC, from which he returned on approximately July 28, 2014.

41.     During Mr. Preston's absence, Mr. Arthur Rudnicki—who had been recently promoted to a Team Lead role ahead of Mr. Preston—assigned some of Mr. Preston's workload to Mr. France for coverage.

7

42.     Upon his return to HSBC on or around July 28, 2014, Mr. Rudnicki told Mr. Preston that Mr. France would likely be expecting a sexual favor in return for covering his workload during Mr. Preston's vacation.

43.     Mr. France did indeed say to Mr. Preston that he "hopes he rewards [him] real well" for assisting during Mr. Preston's vacation, while making a sexually explicit gesture.

44.     This conduct continued through Mr. Preston's first week back from vacation. On or around July 29, 2014, Mr. France asked Mr. Preston if he would show him his naked body, stroked Mr. Preston's arms in a suggestive manner, and again requested he accompany him to the gym, so he could "check out [Mr. Preston's] penis in the locker room."

45.     Mr. Preston immediately went to Ms. Lewis' office, where he repeated his complaints of sexual harassment, as well as detailed this most recent encounter. He again requested to be moved to another department, or at the very least, another seat. However, Ms. Lewis—who was visibly annoyed that Mr. Preston was again complaining to her about the harassment—told him that there was "no time to talk about it," and that "the department is too busy for these discussions."

46.     The following day, on or around July 30, 2014, while Mr. Preston was on a call at his desk, Mr. France approached him from behind and stroked Mr. Preston's neck and arms. Mr. Preston told him to "get away" and to "leave [him] alone," however Mr. France persisted to touch him, and made leering remarks about Mr. Preston's body and how he wished Mr. Preston would succumb to his advances. Mr. Preston, with an open fist, pushed Mr. France's hands away from him and left his desk.

47.     Instead of being supported by HSBC in his attempts to stop unwanted physical touching from a coworker, upon reporting to work the following Monday, August 4, 2014, Mr.

8

Preston was shocked to be advised by Ms. Rhonda Toft, a Human Resources Investigator, that he would be suspended effective immediately as a result of "striking" Mr. France.

48.    Mr. Preston was further advised that he would not be permitted to provide a statement in relation to the incident.

49.    Despite his excellent performance reviews and exemplary record of employment with HSBC, Mr. Preston was fired on August 8, 2014, just over one-week after his most recent complaint to his manager concerning the campaign of sexual harassment to which he had been subjected for the preceding six months.

50.    Prior to Mr. Preston's termination, upon information and belief, HSBC did not engage in any through investigation regarding Mr. Preston's complaints of sexual harassment.

51.    Based upon these facts, HSBC discriminated and retaliated against Mr. Preston based on his sex. Specifically, HSBC ultimately created and/or ratified a hostile work environment culminating in the abrupt termination of Mr. Preston's employment as a result of his repeated protests against and unwillingness to submit to Mr. France's sexual advances.

52.    As a result of Defendant's unlawful discriminatory and retaliatory conduct, including, but not limited to, the retaliatory termination of his employment as a result of his protected of sexual harassment, Mr. Preston has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, the loss of past and future income, compensation and other benefits to which he would otherwise be entitled.

53.    As a further direct and proximate result of Defendant's unlawful actions, Mr. Preston has suffered damage to his reputation and career.

54.    As a further direct and proximate result of Defendant's unlawful actions, Mr. Preston has suffered, and continues to suffer, severe mental anguish and emotional distress,

9

including, but not limited to, humiliation, embarrassment, stress, and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

55.     Defendant's discriminatory and unlawful conduct against Mr. Preston was intentional and malicious and/or showed a deliberate, willful, wanton and reckless disregard for his rights under the New York State and City Human Rights Laws.

**FIRST CAUSE OF ACTION**
**(Sexual Harassment and Sex Discrimination Under the**
**New York City Human Rights Law)**

56.     Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

57.     Defendant has discriminated against Plaintiff on the basis of his sex in violation of the New York City Human Rights Law by subjecting Plaintiff to disparate treatment based upon his sex including, but not limited to, by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive sexual harassment of Plaintiff, and by refusing to investigate his complaints of sexual harassment and discrimination.

58.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which he is entitled to an award of monetary damages and other relief.

59.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and

10

emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

60.     Defendant's unlawful discriminatory actions were intentional, and constitute malicious, willful and wanton violations of New York City Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of New York City Human Rights Law)

61.     Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

62.     By the actions described above, among others, Defendant retaliated against Plaintiff on the basis of his protected activities in violation of the New York City Human Rights Law by not engaging in any investigations of his complaints and ultimately terminating his employment as a result of his protected complaints.

63.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

64.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

11

65.     Defendant's unlawful retaliatory actions were intentional, and constitute malicious, willful and wanton violations of New York City Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION
### (Sexual Harassment and Sex Discrimination Under the New York State Human Rights Law)

66.     Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

67.     Defendant has discriminated against Plaintiff on the basis of his sex in violation of the New York State Human Rights Law by subjecting Plaintiff to disparate treatment based upon his sex including, but not limited to, by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive sexual harassment of Plaintiff, and by refusing to investigate his complaints of sexual harassment and discrimination.

68.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which he is entitled to an award of monetary damages and other relief.

69.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

12

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of New York State Human Rights Law)

70.     Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

71.     By the actions described above, among others, Defendant retaliated against Plaintiff on the basis of his protected activities in violation of the New York State Human Rights Law by not engaging in any investigations of his complaints and ultimately terminating his employment as a result of his protected complaints.

72.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

73.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

A.     A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the State and City of New York;

13

B.     An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C.     An order directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discriminatory and retaliatory treatment and otherwise unlawful conduct, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect his employment and personal life;

D.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

E.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputations and loss of career fulfillment;

F.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for his mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

G.     An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

H.     An award of punitive damages;

I.     An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

J.     Such other and further relief as the Court may deem just and proper.

14

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated:   October 21, 2014
      New York, New York             Respectfully submitted,

**THE OTTINGER FIRM, P.C.**

By: _Ariel Y. Graff_
     Ariel Y. Graff
     Robert W. Ottinger

401 Park Avenue South
New York, New York 10016
Telephone: (212) 571-2000
Facsimile: (212) 571-0505
ari@ottingerlaw.com
robert@ottingerlaw.com

*COUNSEL FOR PLAINTIFF*